UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALL-SOUTH SUBCONTRACTORS, INC.,

     Plaintiff,

v.                               Case No. 3:15cv9/MCR/CJK

AMERIGAS PROPANE, INC. and
AMERIGAS PROPANE, L.P.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff's "Motion to Remand and for Jurisdictional Discovery" (doc. 12) and plaintiff's "Amended Motion for Jurisdictional Discovery" (doc. 27). Defendants have responded in opposition to both motions (docs. 17, 30). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and N.D. Fla. Loc. R. 72.3. Upon careful consideration of the record, the parties' submissions, and the relevant law, the court concludes plaintiff's motion to remand should be granted. Plaintiff's amended motion for jurisdictional discovery, therefore, should be denied as moot.

## BACKGROUND AND PROCEDURAL HISTORY

On October 31, 2014, plaintiff All-South Subcontractors, Inc. ("All-South") filed a Class Action Complaint against defendants AmeriGas Propane, Inc., and AmeriGas Propane, L.P. (collectively, "AmeriGas"), in the Circuit Court of the First

Judicial Circuit in and for Escambia County, Florida.  (Doc. 1-1, p. 2-12).[1]  The initial complaint was not served on the defendants.  (Doc. 1, p. 1).  On December 3, 2014, All-South filed an Amended Class Action Complaint ("Amended Complaint").  (Doc. 1-2, p. 9-19).  The Amended Complaint contains the following assertions.

AmeriGas sells and delivers propane to customers in Florida.  (Doc. 1-2, p. 9).  When AmeriGas delivers propane to customers, it charges a "Fuel Recovery Fee."  (*Id.*).  AmeriGas claims this fee is used to recover the fuel costs incurred in delivering propane and varies in relation to those fuel costs.  (*Id.*).  All-South alleges the Fuel Recovery Fee "bears absolutely no relation to Defendants' actual fuel costs and Defendants do not use the proceeds from the Fuel Recovery Fee to offset its fuel costs."  (*Id.*).  All-South contends AmeriGas already incorporates its fuel costs into the price of its propane and the Fuel Recovery Fee is used "to generate extra profit at their customers' expense[.]"  (*Id.*, p. 9-10).  Based on these allegations, All-South asserts AmeriGas: (1) has violated the Florida Deceptive and Unfair Trade Practices Act and (2) has been unjustly enriched at its customers' expense.  (*Id.*, p. 10, 16-19).  All-South brings its claims against AmeriGas as a class action under Florida law pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.  (*Id.*, p. 11).  The proposed class encompasses: "All persons who paid Defendants (or either of them) Fuel Recovery Fees for propane that was delivered in Florida from October 31, 2010 to the date of class notice."  (*Id.*, p. 11).  Neither the initial complaint nor the Amended Complaint contains any allegations concerning the amount of damages sought from AmeriGas.

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

AmeriGas was served with the Amended Complaint on December 19, 2014. (*Id.*, p. 2-8).  On January 8, 2015, AmeriGas removed this putative class action from state to federal court, alleging federal jurisdiction exists under the Class Action Fairness Act ("CAFA") because the proposed class contains at least 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000. (Doc. 1); *see* 28 U.S.C. § 1332(d)(2), (d)(5)(B).  To support its claim that federal jurisdiction exists over this case, AmeriGas attached a declaration[2] from AmeriGas employee Laurie Bergman to its Notice of Removal.  (Doc. 1-3).  The declaration stated that "AmeriGas has recovered in excess of $5 million in Fuel Recovery Fees for propane delivered and services provided in Florida from October 1, 2011 to September 30, 2014."  (Doc. 1-3).

On January 22, 2015, All-South filed a "Motion to Remand and for Jurisdictional Discovery."  (Doc. 12).  All-South claimed Bergman's declaration failed to establish federal jurisdiction exists under CAFA because Bergman did not "state whether the putative class includes more than 100 members" and failed to provide "any supporting information or documentation" for the assertion that AmeriGas recovered more than $5 million in Fuel Recovery Fees from October 1, 2011, to September 30, 2014.  (Doc. 12, p. 3).  All-South also argued Bergman's declaration did "not address the amount in controversy for the class ***as pled*** for two reasons": (1) the proposed class is limited to customers who "paid" the Fuel Recovery Fee; Bergman, however, indicates the amount of fees "recovered" exceeded $5 million, not the amount of fees "paid"; and (2) Bergman's amount included Fuel Recovery Fees for both propane delivered and services provided, while the proposed

---

[2] A sworn declaration is legally the same as an affidavit.  *See* 28 U.S.C. § 1746.

class is limited to customers who paid the Fee for propane deliveries only. (*Id.*, p. 6) (emphasis in original).   All-South requested that the court permit limited jurisdictional discovery to "allow both parties to present the Court with the 'proof' necessary to determine if jurisdiction exists and ensure that the interests of judicial economy are served."[3]  (*Id.*, p. 1-2, 7-9).

AmeriGas responded in opposition to the motion for remand, contending the notice of removal, Bergman's initial declaration, and a supplemental declaration provided by Bergman establish, by a preponderance of the evidence, that All-South's proposed class contains more than 100 members and the amount in controversy exceeds $5 million.  (Doc. 17).   AmeriGas, claiming its burden of establishing jurisdiction had been met, opposed jurisdictional discovery, asserting discovery would be "futile, time-consuming, and costly," and no legal authority exists for a plaintiff to conduct discovery to support a motion to remand.  (*Id.*, p. 4, 11-14).

On February 24, 2015, All-South filed an "Amended Motion for Jurisdictional Discovery," which serves as a reply to AmeriGas' response. (Doc. 27).  The amended motion asserts Bergman's supplemental declaration fails to establish the amount in controversy because (1) it does not identify the records Bergman reviewed or the calculations she performed to arrive at her numbers; (2) the numbers include fees paid by both residential and commercial customers; and (3) the supplemental declaration states the amount of fees "realized," not the amount of fees "paid."  (*Id.*, p. 5-8). Based on these objections, All-South renewed its request for jurisdictional discovery.[4]

---

[3] Plaintiff requested the discovery consist of "two depositions and ten requests for production limited to jurisdictional issues."  (Doc. 12, p. 1).

[4] The amended motion for jurisdictional discovery requests that All-South be allowed to depose Bergman and that AmeriGas produce the documents Bergman reviewed to prepare her

(*Id.*, p. 8-13).

AmeriGas responded in opposition to All-South's amended motion, claiming All-South failed to identify legal precedent that allows a plaintiff to conduct discovery in support of a motion for remand.  (Doc. 30, p. 7-8).  AmeriGas also contends All-South's attempt to draw a distinction between residential and commercial customers is without merit because the proposed class includes "all persons."  (*Id.*, p. 6-7).  Finally, defendants assert plaintiff's distinction between the amount of fees paid and the amount of fees realized is immaterial because "the amount paid, if different from the amount realized, would actually be *greater* than the amount realized, thereby resulting in an even *greater* amount in controversy."  (*Id.*, p. 7) (emphases in original).

## DISCUSSION

A.   Overview of CAFA Removal

The Class Action Fairness Act ("CAFA") "grants federal district courts jurisdiction over class actions where (1) *any* member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members."  *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 911-12 (11th Cir. 2014) (emphasis in original).  "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'"  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551, 190 L. Ed. 2d 495 (2014) (quoting 28 U.S.C. § 1446(a)).  The "notice of removal need include only a plausible

---

supplemental declaration.  (Doc. 27, p. 13-14)

Case No. 3:15cv9/MCR/CJK

allegation that the amount in controversy exceeds the jurisdictional threshold," *id*. at 554, and "need not contain evidentiary submissions." *Id.* at 551. "[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. When a notice of removal's allegations are disputed, the removing party has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional minimum. *Dudley*, 778 F.3d at 913. In *Dart Cherokee Basin Operating Co., LLC v. Owens*, the Supreme Court made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." 135 S. Ct. at 554; *see also Dudley*, 778 F.3d at 912 (After *Dart*, "we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions."). Nevertheless, the removing party shoulders the burden of proving federal jurisdiction is proper, just as before the Supreme Court's decision in *Dart*. *See Dudley*, 778 F.3d at 913 (The Eleventh Circuit has "repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. . . . *Dart*–which did not involve a plaintiff's contest to the defendant's jurisdictional allegations–did not disrupt any of this pre-existing CAFA case law.").

B.   <u>Preliminary Matters</u>

At the outset, the court notes CAFA's minimal diversity and numerosity requirements are not in dispute. Plaintiff All-South is considered a citizen of Alabama because it "is an Alabama corporation with its principal place of business in Jefferson County, Alabama." (Doc. 1-2, p. 11); *see* 28 U.S.C. § 1332(c)(1) ("a

corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business"). Defendant AmeriGas Propane, Inc., is considered a citizen of Pennsylvania because it is a Pennsylvania corporation with its principal place of business in King of Prussia, Pennsylvania. (Doc. 1-3, p. 1). Because All-South and AmeriGas Propane, Inc., are citizens of different states, the requirement of minimal diversity is met. *See Dudley*, 778 F.3d at 911-12 (requirement of minimal diversity is satisfied if "*any* member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant") (emphasis in original). Furthermore, All-South "does not contest that diversity of citizenship exists." (Doc. 12, p. 5, fn. 2).

As for CAFA's proposed class size requirement, All-South initially challenged the notice of removal's assertion that the proposed class contained at least 100 members. (Doc. 12, p. 5). In response, AmeriGas produced Bergman's supplemental declaration, which indicates: (1) "AmeriGas has identified over 100 customers who paid the Fuel Recovery Fee for propane delivered in Florida in the month of December 2014 alone"; and (2) "[a]s of [February 4, 2015], AmeriGas has 33 district locations in Florida, which supply propane and propane-related equipment and services to the Company's approximately 152,000 residential customers and approximately 25,000 commercial customers in Florida." (Doc. 18 p. 2-3). AmeriGas also noted the Amended Complaint indicated the proposed class included more than 60 members. (Doc. 17, p. 6-7; Doc. 1-2, p. 12-13). All-South's Amended Motion for Jurisdictional Discovery, filed after the supplemental declaration was submitted, does not claim the proposed class includes less than 100 members or that AmeriGas has failed to establish CAFA's class size requirement. Based on this

evidence, the court finds AmeriGas has established, by a preponderance of the evidence, the proposed class contains at least 100 members.

C.     Amount in Controversy

The parties' dispute, therefore, is focused on whether AmeriGas has demonstrated the amount in controversy exceeds $5 million.  "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).  When determining whether the $5 million dollar threshold has been surpassed, "[a] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014).  "The amount in controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *Pretka*, 608 F.3d at 751.  "'Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.'" *Id.* at 752 (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir.2001)). Because All-South contests AmeriGas' practice of charging Fuel Recovery Fees, the amount in controversy in this case is the amount of Fuel Recovery Fees that have been charged to members of the proposed class.

To establish the requisite amount in controversy, AmeriGas relies on Bergman's initial and supplemental declarations. (Docs. 1-3, 18).  Bergman's initial declaration states "AmeriGas recovered in excess of $5 million in Fuel Recovery Fees for propane delivered and services provided in Florida from October 1, 2011 to

September 30, 2014." (Doc. 1-3, p. 1).  After All-South filed the motion for remand, Bergman submitted a supplemental declaration with more detail concerning the amount in controversy.  (Doc. 18).  The relevant part portion of the supplemental declaration provides:

> 8.     In general, a vast majority of the trips that AmeriGas trucks make is to deliver propane to customers, not to provide propane-related services.  For example, propane-related services may include the drop off or pick up of a propane tank, or to service a propane system. Otherwise, AmeriGas trucks deliver propane to fill its customers' tanks.
>
> 9.     By way of example, according to my review of Company records, approximately 96.5% of the Fuel Recovery Fee billed to customers in Florida for fiscal year 2014 was for an order that included the delivery of propane.  The remaining approximate 3.5% of the Fuel Recover Fee billed to customers in Florida for fiscal year 2014 was for services.
>
> 11.     According to my review of AmeriGas records, our Florida locations realized $3.8 million in Fuel Recovery Fees in fiscal year 2014; they realized $4.1 million in Fuel Recovery Fees in Fiscal Year 2013; they realized $3.1 million in Fuel Recovery Fees in fiscal year 2012; and they realized $3.3 million in Fuel Recovery Fees in fiscal year 2011.  The Company "realizes" the amount billed to customers less any credits given to customers.

(*Id.*, p. 2).

After analyzing both parties' arguments and the evidence submitted by AmeriGas, the court finds, utilizing the preponderance of the evidence standard, that AmeriGas has failed to demonstrate the amount in controversy exceeds $5 million. Thus, the undersigned recommends that plaintiff's motion to remand be granted.

1.     <u>Bases for Bergman's Declarations</u>

Bergman's supplemental declaration indicates the figures therein were based on her "review of AmeriGas records[.]"  (Doc. 18, p. 2).  All-South contends

Case No. 3:15cv9/MCR/CJK

Bergman failed to identify the records she reviewed and the calculations she performed to arrive at the figures provided in her declarations. (Doc. 12, p. 5-6; Doc. 27, p. 3-5).  All-South asserts "[t]he detailed records showing the amount of Fuel Recovery Fees paid by the class are necessary evidence of the amount in controversy and AmeriGas should submit such records." (Doc. 12, p. 6).  All-South is incorrect if it assumes AmeriGas must produce or describe the records Bergman reviewed before submitting her declaration.  *See Pretka*, 608 F.3d at 755 (To establish the amount in controversy, "[d]efendants may introduce their own affidavits, declarations, or other documentation[.]"); *id.* at 756 (noting that "declaration by itself" can establish jurisdictional requirement); *see also Dudley*, 778 F.3d at 917 (agreeing with observation that defendant, in response to motion to remand, should not be required to produce "detailed, sales-record-by-sales-record proof" regarding the amount in controversy).  Thus, AmeriGas' failure to provide its accounting ledgers, invoices, or similar evidence does not ipso facto require remand.

        2.    Residential vs. Commercial Customers

        All-South contends the Fuel Recovery Fee figures provided in Bergman's supplemental declaration do not correspond to "the precise class in this case" because the figures include fees collected from AmeriGas' residential customers.  (Doc. 27, p. 5-7).  All-South claims AmeriGas "has a clear understanding" that the putative class involves only commercial customers because AmeriGas' motion to dismiss argues: (1) "All-South is subject to the General Terms and Conditions of AmeriGas Propane, L.P. Related to the Supply of Propane and Lease of Propane Related Equipment to *Commercial* Customers that AmeriGas allegedly mailed to all of its commercial customers"; (2) "AmeriGas argues that All-South is also subject to an

amendment to the terms and conditions for *commercial* customers that AmeriGas mailed to commercial customers in December, 2012"; and (3) "under the *Commercial* Terms and Conditions on the AmeriGas website, All-South is required to submit any dispute between All-South and AmeriGas to binding arbitration in accordance with the *Commercial* Arbitration Rules of the American Arbitration Association." (Doc. 27, p. 6) (emphases in original).

All-South's assertion that AmeriGas' "understands" the proposed class includes only commercial customers is without merit. As defined in All-South's Amended Complaint, the proposed class includes "[a]ll persons who paid Defendants (or either of them) Fuel Recovery Fees for propane that was delivered in Florida from October 31, 2010 to the date of class notice." (Doc. 1-2, p. 11). All-South's use of the phrase "all persons" does not limit the proposed class to commercial customers. Furthermore, the arguments advanced in AmeriGas' motion to dismiss do not actually suggest the proposed class is comprised only of commercial customers. The relevant portion of AmeriGas' motion contends the court must dismiss this action because All-South has agreed to arbitrate any dispute with AmeriGas. (Doc. 7). Because All-South is in fact a commercial customer, AmeriGas' motion must refer to contractual language applicable to its commercial customers. By making references to contractual provisions applicable to commercial customers in arguing All-South agreed to arbitration, AmeriGas does not redefine the proposed class to exclude residential customers. AmeriGas' failure to distinguish between the Fuel Recovery Fees collected from commercial and residential customers does not aid All-South's position as to a determination of the amount in controversy.

3.   <u>Propane Deliveries vs. Propane-Related Services</u>

Bergman's initial declaration stated "AmeriGas has recovered in excess of $5 million in Fuel Recovery Fees for propane delivered and services provided in Florida from October 1, 2011 to September 30, 2014." (Doc. 1-3, p. 1).  Noting the proposed class includes only those customers who paid the fee "for propane that was delivered[,]" All-South's motion to remand asserts the initial declaration does not establish the true amount in controversy because it included fees recovered for propane-related services.[5]  AmeriGas, through Bergman's supplemental declaration, indicates "[i]n general, a vast majority of the trips that AmeriGas trucks make is to deliver propane to customers, not to provide propane-related services. . . . By way of example, according to [Bergman's] review of Company records, approximately 96.5% of the Fuel Recovery Fee billed to customers in Florida for fiscal year 2014 was for an order that included the delivery of propane.  The remaining approximate 3.5% of the Fuel Recovery Fee billed to customers in Florida for fiscal year 2014 was for services."  (Doc. 18, p. 2).  Based on these facts, the court may reasonably conclude that comparable percentages of the Fuel Recovery Fee were billed for propane deliveries in fiscal years 2011, 2012, and 2013.  *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.") (quotation and other marks omitted).

---

[5] Propane-related services "may include the drop off or pick up of a propane tank, or to service a propane system."  (Doc. 18, p. 2).

4.    <u>Realized vs. Paid Fees</u>

Bergman's supplemental declaration indicates AmeriGas "realized" $3.8 million in Fuel Recovery Fees in fiscal year 2014; $4.1 million in fiscal year 2013; $3.1 million in fiscal year 2012; and $3.3 million in fiscal year 2011. (Doc. 18, p. 2-3). The amount "realized" corresponds  to "the amount billed to customers less any credits given to customers." (*Id.*, p. 3). All-South asserts Bergman's realized revenue figures do "not actually state the amount of fuel recovery fees *paid*" because the declaration "gives no indication as to the amount of the credits, the circumstances under which they are given, and the frequency with which they are given."[6] (Doc. 27, p. 7) (emphasis in original).

The undersigned agrees the amount of fees realized does not correspond to the amount of fees paid, but not entirely for the reason All-South suggests.[7]  By its terms, Bergman's definition of realized revenue has already subtracted the amount of credits due to customers, making knowledge of the credits themselves unnecessary.  For

---

[6] AmeriGas suggests "the amount paid, if different from the amount realized, would actually be *greater* than the amount realized, thereby resulting in an even *greater* amount controversy." (Doc. 30, p. 7) (emphases in original).  Considering the amount realized is the amount billed less any credits, the undersigned does not see how customers could actually pay more in Fuel Recovery Fees than they were billed.

[7] All-South did not flesh out every argument addressed in this Report and Recommendation; because the court is determining whether subject matter jurisdiction exists, however, an independent examination of AmeriGas' evidence by the court is appropriate.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *cf. Dudley*, 778 F.3d at 916 ("Once Dudley contested Lilly's notice of removal about its amount-in-controversy allegations, Lilly responded with proffers in affidavit form.  It then fell to the district court to discern whether the amount in controversy had been established.")

Case No. 3:15cv9/MCR/CJK

example, if a customer is billed $100 and receives a $20 credit, the realized revenue from that customer–the amount billed less any credits–is $80.  The potential problem with the realized revenue figure is not its reference to credits; it is simply that the figure identifies the amount *billed* to customers, not the amount actually *paid*.  If customers are billed the Fuel Recovery Fee but fail to pay it, the amount billed still appears as realized revenue.  Because those customers have potentially not actually paid the fee, however, they are not members of the proposed class [8] and the billed but unpaid amount of the fee should not be included in the amount-in-controversy calculation.[9]  *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual *class members* shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.") (emphasis added); *Dudley*, 778 F.3d at 913 (citing *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1331 (11th Cir. 2006)) ("We also underscore that jurisdictional facts are evaluated as they stand at the time of removal.").  The number of customers who fail to pay their Fuel Recovery Fee bill may be relatively small.  Without any information concerning AmeriGas' billing or collection practices, however, the court cannot provide its own baseless estimations.[10]

---

[8] As previously discussed, All-South's proposed class includes only those customers of AmeriGas who actually paid the Fuel Recovery Fee.

[9] The undersigned recognizes a customer could pay the fee on one occasion but then fail to pay the billed fee on a subsequent occasion.  By paying the fee once during the relevant time period, the customer would become a member of the proposed class.  If the customer subsequently failed to pay a billed fee, that amount would still properly be considered in controversy because a ruling in the class' favor could eliminate the customer's obligation to pay for all or part of the billed amount.

[10] Bergman's initial declaration stated "AmeriGas has recovered in excess of $5 million in Fuel Recovery Fees for propane delivered and services provided in Florida from October 1, 2011,

The undersigned is aware that at least one court within the Eleventh Circuit has reached a different conclusion in a case involving a similar fact pattern.  In a case from the Middle District of Georgia, the plaintiffs challenged the defendants' removal of a class action to federal court under CAFA, arguing the defendants failed to establish the requisite amount in controversy.  *Michelle's Rest. of Georgetown, Inc. v. Advanced Disposal Servs., Inc.*, No. 4:13-cv-488 (CDL), 2014 WL 824211 at *1-2 (M.D. Ga. March 3, 2014).  In support of removal, the defendants produced affidavits demonstrating they had "'recognized revenues' attributable to the fees that Plaintiffs challenge[d] in excess of $5,000,000.00[.]"  *Id*. at *2.  The district court rejected the plaintiffs' claim that recognized revenues did not accurately reflect the amount in controversy:

> Plaintiffs argue that "recognized revenues" should not be considered in determining the amount in controversy.  Instead, Plaintiffs contend that the amount in controversy is the amount of fees that the putative class members have actually "paid."  Plaintiffs maintain that it is sheer speculation as to whether "recognized revenues" is the same thing as "fees paid."  The Court finds this linguistic argument unpersuasive.  It is true that the amount in controversy must be determined from the Plaintiffs' point of view.  *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 219 (11th Cir. 1997).  But the revenues Defendants received from the fees paid is exactly what Plaintiffs have put in controversy in this case, and Defendants have established that amount to be in excess of $5,000,000.

*Id.*  The reasoning in *Michelle's*, however, should not control the instant action because there was no indication in *Michelle's* that the defendants defined recognized

---

to September 30, 2014.  (doc. 1-3, p. 1).  A conclusion concerning AmeriGas' collection rates cannot be extrapolated from this general statement.  As noted by All-South in its motion to remand, the term "recovered" is left undefined and the proposed class includes only customers who paid AmeriGas the fee for propane deliveries.  (Doc. 12, p. 6).

Case No. 3:15cv9/MCR/CJK

revenues to include only the amount billed to customers.  Here, by AmeriGas' own submission, realized revenue coincides with the amounts billed to customers.

There is an additional problem with the realized revenue figures.  AmeriGas indicates "approximately 96.5% of the Fuel Recovery Fee billed to customers in Florida for fiscal year 2014 was for an order that included the delivery of propane." (Doc. 18, p. 2).  As previously noted, one may reasonably conclude that in 2011, 2012, and 2013, a similar percentage of the Fuel Recovery Fee billed to customers was for deliveries of propane.  Applying this percentage directly to the realized revenue figures for 2011 through 2014 is nevertheless problematic because this number reflects the percent of the fee billed to customers that involved a delivery of propane, not the percent of "the amount billed less any credits" that involved a delivery of propane.

To illustrate this distinction, consider several customers who are billed $100.00 in Fuel Recovery Fees.  According to AmeriGas, approximately $96.50 of the billed amount would be for an order that included the delivery of propane; the remaining $3.50 in fees would be billed for propane-related services.  Assume the customers billed the fee for propane deliveries collectively receive a $30.00 credit to their accounts.  After this credit, AmeriGas has realized revenue of $70.00, of which $66.50–or 95%–is for fees related to the delivery of propane.  Multiplying the percentage provided in Bergman's declaration (96.5%) directly to the realized revenue figure ($70.00) would have resulted in an overstatement of the actual portion of realized revenue that included a delivery of propane ($67.55).  In this example, crediting customers' accounts did not distort the proportion of realized revenue attributable to propane deliveries by very much.  The example does demonstrate, however, that the court would have to make certain assumptions in favor of the party

Case No. 3:15cv9/MCR/CJK

bearing the burden of proof regarding the amount of credits before determining what portion of AmeriGas' realized revenue is actually in controversy.[11]

In sum, AmeriGas' evidence concerning the amount in controversy contains a number of problems that, when considered in the aggregate, render the court unable to determine whether the amount exceeds $5 million.  The court would have to rely on at least three assumptions to determine the amount in controversy is met.  The court would have to assume: (1) that the portion of the Fuel Recovery Fee billed to customers for propane deliveries in 2014 (96.5%) is representative of AmeriGas' business in general and can be applied to three other fiscal years; (2) that 96.5% percent figure is not distorted by credits that may or may not be given after billing and thus can be multiplied by the realized revenue figures to arrive at the amount of fees billed (less credits) for propane deliveries; and (3) that AmeriGas collects a sufficiently high percentage of the amount of fees it bills to exceed the jurisdictional threshold.

---

[11] In *Dudley v. Eli Lilly and Co.*, the Eleventh Circuit affirmed a district court's decision to remand a case removed under CAFA to state court.  In its decision, the Eleventh Circuit noted the defendant had access to the relevant information but failed to provide it to the district court:

> Lilly, after all, had access to its own employment records and its evidence shows that it was able to parse out FDEs and their termination dates, and to provide a payment range for each category of compensation. It seems to us that using these same employment records or others, Lilly could have provided the district court with more information about the amount of compensation that was allegedly denied the class members, without conceding liability or being unduly burdened.

*Dudley*, 778 F.3d at 917.  AmeriGas, like the defendant in *Dudley*, failed to provide the court with information concerning bill collection rates and customer credits almost certainly available in its financial records.  As in *Dudley*, the failure of AmeriGas to provide the court with this information impedes AmeriGas from establishing, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.

Case No. 3:15cv9/MCR/CJK

CONCLUSION

Under CAFA, when the plaintiff contests a removing defendant's allegations concerning the amount in controversy, "the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Dudley*, 778 F.3d at 913.  Here, AmeriGas has failed to meet that burden.  The ambiguities in the evidence provided and AmeriGas' failure to submit any evidence concerning its bill collection rates or customer credits bar, at this stage, its attempt to establish the requisite amount in controversy. Plaintiff's motion to remand, therefore, should be granted, and plaintiff's amended motion for jurisdictional discovery should be denied as moot.

Accordingly, it is respectfully RECOMMENDED:

1.     That plaintiff's "Motion to Remand" (doc. 12) be GRANTED and that this matter be remanded to the state court from which it was removed.

2.     That plaintiff's "Amended Motion for Jurisdictional Discovery" (doc. 27) be DENIED AS MOOT.

3.     That the clerk of court be directed to close the file.

At Pensacola, Florida, this 12th day of June, 2015.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S.Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.