UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALL-SOUTH SUBCONTRACTORS, INC.,

    Plaintiff,

v.                                  Case No. 3:15cv9/MCR/CJK

AMERIGAS PROPANE, INC. and
AMERIGAS PROPANE, L.P.,

    Defendants.

_____/

## O R D E R

    This cause comes for consideration on the Magistrate Judge's Report and Recommendation dated June 12, 2015. The parties have been afforded an opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1), which they have taken advantage of, and the Court has conducted a de novo review of the matter. The Court finds that the Report and Recommendation is due to be adopted.

### Background

    According to the Complaint filed by All-South Subcontractors, Inc., "(All-South")", defendants Amerigas Propane, Inc., and Amerigas Propane, L.P., (collectively "Amerigas") sell and deliver propane to customers in Florida. When Amerigas delivers propane to customers, it charges a "fuel recovery fee," which Amerigas claims is used to recover the fuel costs incurred in delivering propane. All-South asserts, however, that this fee is not used to offset fuel costs, and is in fact just a way to generate extra profit at customer expense. All-South argues that this practice violates the Florida Deceptive and Unfair Trade Practices Act and that Amerigas has been unjustly enriched as a result. All-South brings its claims against AmeriGas as a class action under Florida law pursuant to Florida Rule of Civil Procedure 1.220.

Amerigas removed the case to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), 1332(d)(5)(B), which requires, inter alia, that the amount in controversy exceed $5,000,000. As proof of the amount in controversy, Amerigas provided an affidavit from employee Laurie Bergman attesting that Amerigas has billed customers for over $14,000,000 in fuel recovery fees.[1] All-South responded with a Motion to Remand arguing that the Complaint defined the amount in controversy as the amount Amerigas customers had actually paid in fuel recovery fees, not what Amerigas had billed them. As Amerigas provided no evidence that its customers had paid more than $5,000,000 of the $14,000,000+ billed, All-South maintained that Amerigas failed to prove that the amount in controversy requirement had been met. On review, the Magistrate Judge agreed with All-South that there was no way to know whether Amerigas's customers had paid over $5,000,000 in fuel recovery fees solely from evidence of what Amerigas had billed them. Thus, the Magistrate Judge concluded that Amerigas failed to show by a preponderance of the evidence that the amount in controversy requirement was satisfied and recommended remand.

Amerigas filed a timely Objection to the Magistrate Judge's Report and Recommendation, arguing that it has in fact shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, because it is reasonable and "more likely than not" that its customers paid at least $5,000,000 of the $14,000,000+ it billed them. Additionally, Amerigas asks the Court to consider a new affidavit—which was not before the Magistrate Judge—attesting to the fact that its customers actually paid over $8,000,000 in fuel recovery fees. In response, All-South objects to Amerigas's new evidence, and requests that the Court adopt the Magistrate Judge's Report and Recommendation.

---

[1] Ms. Bergman's explanation of the amount in controversy is less than clear. She states in her affidavit that Amerigas "realized" over $14,000,000 in fuel recovery fees, and defines the amount "realized" as "the amount billed to customers less any credits given to customers." She further states that "approximately 96.5% of the fuel recovery fee billed to customers . . . was for an order that included the delivery of propane . . . . [and] 3.5% . . . was for services." As the Magistrate Judge correctly observed, however, the amount "realized" figure simply represents the amount of money Amerigas ultimately asked its customers to pay. To avoid unhelpful accounting semantics, therefore, the Court will refer to the $14,000,000+ Amerigas ultimately asked its customers to pay as the amount it "billed" to its customers.

**Discussion**

"[I]in determining whether to accept, reject, or modify the magistrate's report and recommendations, the district court has the duty to conduct a careful and complete review." *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404 at 408 (5th Cir. 1982) (en banc)). Where a party objects to the report and recommendation, a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

Section 1332, title 28, of the United States code provides, inter alia, that the district court shall have original jurisdiction in any class action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). When determining whether the $5,000,000 threshold has been met, "[a] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014). "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *Pretka*, 608 F.3d at 751. "'Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.'" *Id.* at 752 (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

Based on the parties' submissions, the Court finds that Amerigas has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. According to the Complaint, the amount of fees paid is the amount in controversy. Amerigas, however, offered evidence only of the billed amount. While the amount billed—over $14,000,000—is well in excess of the amount in controversy requirement, and the filing of this lawsuit suggests that some portion of that billed

amount was paid, Amerigas offered no evidence to the Magistrate Judge of what was actually paid. Without that evidence, it is no more likely that customers paid over $5,000,000 than it is that they paid less. In other words, in the absence of at least some evidence of the amount paid, assigning a value to the amount in controversy would require the Court to pluck a number from thin air. The undersigned agrees with the Magistrate Judge that such speculation cannot satisfy Amerigas's burden on removal.

Furthermore, the Court declines to consider Amerigas's new affidavit—which was not presented to the Magistrate Judge—attesting that its customers actually paid over $8,000,000 in fuel recovery fees. Amerigas had access to the evidence it now seeks to have considered while this matter was pending before the Magistrate Judge, as the new affidavit shows that Amerigas calculated the amount paid in fuel recovery fees based on records kept in the normal course of business before this lawsuit was filed. Moreover, All-South explicitly argued in its Motion to Remand that Amerigas's evidence that it billed customers over $14,000,000 in fuel recovery fees was insufficient to prove the amount in controversy, because there was no way to know whether its customers had actually paid over $5,000,000 of that billed amount. Thus, Amerigas has no excuse for failing to offer evidence of the amount paid when this matter was before the Magistrate Judge.[2] It would turn the magistrate judge referral process on its head to permit Amerigas to use the Magistrate Judge's Report and Recommendation merely to identify weaknesses in its case, so that it may shore them up later by presenting additional evidence to the District Judge. "[T]o consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (quoting *United States*

---

[2] The Court recognizes that 28 U.S.C. § 1446(b) provides that a defendant may, in certain circumstances, remove a case even after the initial thirty day filing window if the case's removability is subsequently ascertained. *See Pretka*, 608 F.3d at 760. However, the traditional rule is that "a defendant cannot show that a previously non-removable case 'has become removable' as a result of a document created by the defendant." *Id.* at 761; *see* § 1446(b). (stating that "a notice of removal may be filed within 30 days after *receipt* by the defendant. . . [of a] paper from which it may *first* be ascertained that the case is one which is or has become removable" (emphasis added)).

*v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).  "Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round."  *Id.* (quoting *Howell*, 231 F.3d at 622).

Accordingly, it is now **ORDERED**:

1. The Magistrate Judge's Report and Recommendation is adopted and incorporated by reference in this order.

2. Plaintiff's "Motion to Remand" is **GRANTED** and this matter is remanded to the state court from which it was removed.

3. Plaintiff's "Amended Motion for Jurisdictional Discovery" is **DENIED AS MOOT**.

4. The clerk is directed to close the file.

**DONE AND ORDERED** this 30th day of July, 2015.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**